Randy BETTELYOUN, Petitioner,

v.

Honorable Marvin S. TALBOTT, Judge of the Sixth Judicial Circuit, Jackson County, South Dakota; and Dr. David Bean, Director, Human Services Center, Yankton, South Dakota, Respondents.

No. 12799.

Supreme Court of South Dakota.

Dec. 24, 1979.

Rehearing Denied Jan. 31, 1980.

Judith A. Atkinson, Asst. Atty. Gen., Pierre, for respondents; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Bruce Ellison, Rapid City, for petitioner.

WOLLMAN, Chief Justice.

On May 25, 1979, this court issued a writ of habeas corpus directed to respondents, the Honorable Marvin S. Talbott, Judge of the Sixth Judicial Circuit, and Doctor David Bean, Director of the Human Services Center, with respect to the pending commitment of petitioner, Randy Bettelyoun, to the Human Services Center. We now determine that the writ should be quashed.

Petitioner, age fifteen, was accused of a murder that allegedly occurred on July 4, 1978. In August of 1978, he was transferred from juvenile court to stand trial as an adult. The circuit court granted petitioner's motion for a competency trial pursuant to SDCL 23–38–2 (now SDCL 23A–10A–4). The jury returned a verdict that found the defendant "mentally incompetent to proceed." Pursuant to SDCL 23–38–6 (now

SDCL 23A–10A–8),[1] the trial court ordered petitioner to report to the Human Services Center at Yankton on May 29, 1979, for commitment "until he is mentally competent to proceed."

Petitioner argues that his commitment to the Human Services Center violates the due process and equal protection clauses of the United States and South Dakota Constitutions, and that SDCL 23–38–6 is unconstitutional as applied to the facts of this case because the "incompetence" here results from immaturity, rather than mental illness as contemplated by the statute.

Petitioner relies on *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). In *Jackson*, the petitioner was a mentally defective deaf mute, committed before trial under Indiana's commitment statutes after a competency hearing. The Indiana state court committed him until the Department of Mental Health should certify him as sane. Since the likelihood of his ever becoming sane was, in the words of the examining psychiatrists, "dim," the United States Supreme Court agreed with Jackson's contention that his commitment became, in effect, an indeterminate incarceration "without the showing required for commitment or the opportunity for release afforded by [Indiana's regular civil commitment statutes]." 406 U.S. at 730, 92 S.Ct. at 1854, 32 L.Ed.2d at 446.

■ SDCL 23–38–6 does not run afoul of *Jackson*. The Indiana statute under which Jackson was committed allowed the institutionalization of a defendant incompetent to stand trial for any period of time necessary for him to attain his sanity, without a mandatory review of his condition or progress. SDCL 27A–12–15,[2] in contrast to the Indiana statute, requires a patient admitted to the Human Services Center to be "examined to determine whether he should continue to receive hospitalization" within fifteen days after admission. SDCL 27A–12–16 [3] requires a review of each admittee ninety days after admission. In short, there is no chance for petitioner here to languish in confinement, as there was in *Jackson*.

The holding in *Jackson* contemplates the procedure provided by our statutes. The Court stated:

We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future.

406 U.S. at 738, 92 S.Ct. at 1858, 32 L.Ed.2d at 451. South Dakota statutes provide for a review of petitioner's condition within a reasonable period of time, and the Human Services Center can make the "substantial probability" determination within that period.

■ Petitioner argues that because there is no showing that the Human Services Center can help him attain the competency required for trial, his commitment violates the "rational relationship" requirement of *Jackson*, wherein the Court stated: "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which

---

1. SDCL 23A–10A–8 states: "If the defendant is found to be mentally incompetent to proceed, the trial or sentencing shall be suspended until he is mentally competent to proceed, and the court shall, order that he be, in the meantime, committed to an appropriate state facility until he is mentally competent to proceed."

2. SDCL 27A–12–15 states:
   No later than fifteen days after a patient is admitted to the center, the administrator shall have the patient examined to determine whether he should continue to receive hospitalization and whether a treatment plan complying with § 27A–12–11 has been implemented. When a patient no longer requires hospitalization according to the standards for commitment or when a treatment plan has not been implemented, he must be released immediately unless he agrees to continue with treatment on a voluntary basis.

3. SDCL 27A–12–16 states, in pertinent part:
   Every person committed to the center or a community mental health center shall be reviewed at the end of ninety days to determine if he continues to meet the criteria of one who is mentally ill and in need of treatment.

the individual is committed." 406 U.S. at 738, 92 S.Ct. at 1858, 32 L.Ed.2d at 451.

We conclude that petitioner infers too much from the jury's verdict at the competency trial. The jury verdict found petitioner to be mentally incompetent to stand trial. We decline to read more into that finding than is written. The public has a legitimate concern in ascertaining a defendant's competency to stand trial. Given the procedural review requirements of South Dakota law, we do not feel that the *Jackson* precepts are infringed by the facts of the case at bar.

We do not find persuasive petitioner's argument that his examinations outside the Center make impractical his temporary commitment for examination, observation, and treatment. In the fifteen or ninety day period, under the supervision of the staff, the fact that he is competent to stand trial, or soon will be, may come to light. On the other hand, factors beyond his "immaturity" may appear, rendering him incompetent to stand trial now, in the near future, or forever. Without a thorough analysis of his mental capabilities,[4] no one knows when he can be tried, if ever. Once we accept the premise that petitioner's competency is a matter into which the State may legitimately inquire, we deem careful observation over a reasonable period of time by qualified professionals to be the most logical, efficient, and harmless way to conduct that inquiry.

The writ of habeas corpus is quashed.

All the Justices concur.

4. Dr. Burnap saw the petitioner for one hour, stating "I feel this was sufficient time to gather the data necessary to form an opinion." Dr. Renka was with petitioner a total of three hours, with the personal interview taking two of those three hours. Dr. Renka's opinion was that petitioner had a concept of distributive justice [punishment tailored to the crime], as opposed to retributive justice, and that he understood the concept of premeditated acts, and the concept of self-defense. Asked if he believed petitioner could communicate with someone such as an attorney if required to, Dr. Renka stated: "I think he has the understanding and the ability. I don't know if he has the willingness."